[Cite as *Dozier v. Indian Hills Healthcare Group, Inc.*, 2026-Ohio-3116.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

AIRRION DOZIER, AS THE : 
ADMINISTRATOR OF THE ESTATE 
OF HERSCHEL CRAWFORD, :

    Plaintiff-Appellant, :

                    No. 115923

    v. :

INDIAN HILLS HEALTHCARE : 
GROUP, INC. D/B/A THE WILLOWS 
HEALTH AND REHAB CENTER, :

    Defendant-Appellee. :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 13, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-995219

---

### *Appearances:*

Thomas Law Offices, PLLC, and Louis C. Schneider, *for appellant*.

Marshall Dennehey, P.C., Jillian L. Dinehart and Leslie M. Jenny, *for appellee*.

MICHAEL JOHN RYAN, J.:

{¶ 1} Plaintiff-appellant Airrion Dozier ("Dozier"), as the Administrator of the Estate of Herschel Crawford ("Crawford"), appeals from the trial court's decision to enter a directed verdict in favor of defendant-appellee Indian Hills Healthcare Group, Inc., d.b.a. The Willows Health and Rehab Center ("The Willows"). After a thorough review of the facts and pertinent law, we affirm.

**Factual and Procedural History**

{¶ 2} Dozier is the daughter of the decedent Crawford. The record establishes that Crawford became a resident at The Willows in July 2012 at the age of 67. Crawford continuously remained a resident of the facility — except for a brief period of time when he was hospitalized in late May 2020 — until his death in early June 2020 at age 75.

{¶ 3} In October 2021, Dozier filed an action against the facility. *See* Cuyahoga C.P. No. CV-21-954811. In September 2023, Dozier voluntarily dismissed the case without prejudice. In March 2024, Dozier brought this action against the facility, asserting the following four claims for relief: (1) "ordinary negligence"; (2) "medical claim under R.C. 22305.113"; (3) wrongful death; and (4) punitive damages. The claims related to Crawford falling at the facility in May 2020.

{¶ 4} Prior to trial, The Willows filed numerous motions in limine, one of which was to preclude argument, discussion, or evidence of certain federal and state regulations at trial on the ground that the regulations do not establish the standard

of care or provide for a civil private right of action. The trial court granted the defense's motion.

{¶ 5} In November 2025, the case proceeded to a jury trial. Dozier presented two witnesses: herself and an expert, Dr. Timothy Klein.

{¶ 6} Dozier testified that her father enjoyed being a resident at The Willows and admitted that she testified at her deposition that "[e]verything was fine until [the subject] fall." Dozier frequently visited Crawford, but she would visit him in a common area as opposed to his room. Further, during the Covid pandemic-shut down starting in March 2020, Dozier's visits were limited to meeting Crawford at the front door of the facility to bring him snacks. During his time at The Willows, Crawford always used a walking aid, beginning with a cane and progressing to a four-prong walker.

{¶ 7} The record indicates that Crawford fell other times while he was a resident at The Willows but was never seriously injured as a result of those falls. The record further indicates that when Crawford first became a resident at The Willows, a care plan was put in place for him and the plan was reevaluated several times during his stay at the facility, including in January 2020. Prior to the subject fall, Crawford had not fallen in two years. In April 2020, Crawford completed a course of physical therapy and was deemed by the therapists as "independent."

{¶ 8} Dozier testified that late one evening in May 2020, she received a call from Hillcrest Hospital telling her that her father was at the hospital because he sustained a hip injury after falling at The Willows. Crawford passed away on June 7,

2020.  The death certificate stated Crawford's cause of death as "failure to thrive with recent hip fracture."

{¶ 9}    The medical records from The Willows indicated that Crawford fell in his room on May 28, 2020, and the fall was only witnessed by Crawford's roommate. The records indicated that the roommate said Crawford got up from the fall on his own.  Dozier testified that her father told her that he remained on the floor for a while after the fall until a staff member came into the room and helped him.

{¶ 10}  The records further demonstrated that on May 30, 2020, two days after the fall, Crawford reported to an aide at the facility that he fell on May 28, 2020, and had pain in his hip.  After performing x-rays on Crawford's hip, The Willows had Crawford transported to the hospital, where he underwent hip surgery.

{¶ 11}  Dr. Klein testified that he did not know where in Crawford's room Crawford fell, what caused Crawford to fall, or when the fall occurred.  The only information Dr. Klein had regarding the fall was that it occurred in Crawford's room. Dr. Klein's review of the case and opinion were based on Crawford's medical records from The Willows and his hospital stays.[1]

{¶ 12}  Dr. Klein admitted that not every fall is preventable; that is, falls are possible even when appropriate care is rendered.  However, Dr. Klein was of the opinion that, in this case, The Willows did not have the appropriate interventions in place to prevent Crawford's fall.  Dr. Klein identified the following interventions that

---

[1] Relative to the fall at issue in this case, Crawford was originally admitted to Hillcrest Hospital and then transferred to Richmond Medical Center, where he passed away.

are commonly used in order to prevent nursing home residents from falling: a bedside table for frequently used items; body-positioning pillows to prevent rolling; a concave mattress that makes it harder for a patient to get out of bed; a toileting schedule; a bedside mat; and a low-positioned bed. Dr. Klein testified that it was his opinion, to "a reasonable degree of medical probability and medical certainty," that The Willows' failures caused Crawford to fall and break his hip.

{¶ 13} Dr. Klein testified that

those are simple things that would not have cost really hardly anything that I think could and should have been put into play.

Now at the end of the day, you know, would putting all of those prevented the fall, nobody can say that. But in my opinion, more likely than not, you know, not putting them in you know it's not going to work, so he fell. If you put them in, more likely than not, in my opinion it would have prevented it or at least would have helped.

But the concern also even if there was concern there is those gaps in care, those 22 hours where he wasn't being seen, to me that's more of a smoking gun in this case than the other in that it didn't look like people were checking on him and that may have been when it happened.

At the end of the day, we can't say exactly how. We just know more likely than not it happened on [May] 28th because that's what he said. We have got gaps in care from [May] 27th to [May] 28th. So it could have happened anywhere in that time period, but I don't know exactly what happened, but I know a lot of things that the standard of care would require didn't appear to have been done, and he was still in such a way I think he was high risk predicated by all of the [daily activity] sheets that we went through at length.

{¶ 14} On cross-examination, Dr. Klein admitted that if Crawford fell while he was simply walking in his room — that is, he was not trying to get out of or in bed, not reaching for something, or was not using the bathroom — none of the interventions he testified about would have helped or prevented the fall.

{¶ 15} After Dozier rested her case, The Willows moved for a directed verdict. After considering the parties' arguments, the trial court granted the defense's motion for a directed verdict. Dozier appeals, raising the following two assignments of error for our review:

I.      The Trial Court erred when it granted a directed verdict in favor of Appellee because it did not construe the facts in favor of Appellant, and it did not follow binding precedent.

II.     [T]he trial court erred when it granted Defendant's Motion to Exclude Reference to Federal and State Regulations.

**Law and Analysis**

{¶ 16} We begin with the second assignment of error because, if the evidence was improperly excluded, it could have impacted the motion for a directed verdict.

**Dozier Has Not Waived the Right to Appeal the Trial Court's Decision Granting The Willows' Motion in Limine; The Trial Court Did Not Abuse Its Discretion by Granting the Motion in Limine**

{¶ 17} In her second assignment of error, Dozier contends that the trial court erred by granting The Willows' motion in limine to exclude reference to federal and state regulations in support of Dozier's negligence claims and The Willows' alleged breach of the standard of care.

{¶ 18} The Willows claim that Dozier waived this issue on appeal by failing to raise an objection to the exclusion of the evidence at trial and failing to proffer what the evidence purported to demonstrate.

{¶ 19} It is true that, previously, a trial court's pretrial decision on a motion in limine generally did not preserve any error for appellate review — the party opposing the motion had to object again at trial and proffer the evidence it sought

to have admitted. *See State v. Grubb*, 28 Ohio St.3d 199, 201-202 (1986). However, Evid.R. 103, governing rulings on evidence, was amended, effective July 1, 2017, and now provides in part that "[o]nce the court rules definitely on the record, *either before* or at trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." (Emphasis added.) Evid.R. 103(A)(2).

{¶ 20} Here, the trial court issued a written judgment granting The Willows' motion in limine to exclude reference to federal and state regulations. That judgment was a definitive ruling on the record and therefore the issue has not been waived for our review.

{¶ 21} We review a trial court's ruling on a motion in limine for an abuse of discretion. *United States Bank v. Amir*, 2012-Ohio-2772, ¶ 18 (8th Dist.), citing *Sokolovic v. Hamilton*, 2011-Ohio-4638 (8th Dist.). An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 22} This court has held that "violation of a regulation could not constitute negligence *per se*, because regulations are not legislative enactments." (Emphasis in original.) (Citation omitted.) *Stephens v. A-Able Rents Co.*, 101 Ohio App.3d 20, 27-28 (8th Dist. 1995). Further, the Supreme Court of Ohio has held that administrative rules and regulations do not establish a standard of care, only legislative enactments do, because "[s]trict compliance with such a multitude of

rules would be virtually impossible." *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 568 (1998).

{¶ 23} "[F]ederal regulations contemplate administrative, rather than judicial, enforcement." *Mackey v. Allercare of Hartville Ctr. for Rehab. & Nursing Care*, 2023-Ohio-1581, ¶ 60 (5th Dist.), citing *Harmon v. St. Augustine Manor*, 2007 U.S. Dist. LEXIS 25504 (N.D. Ohio Apr. 5, 2007).[2] Also, "regulations requiring expert testimony to prove a violation are too general to form the basis of negligence *per se*." (Emphasis in original.) *Stephens* at 28.

{¶ 24} The Ohio Legislature has codified its prohibition against the use of federal and state regulations as evidence against any party or to establish the standard of care. Specifically, R.C. 2317.45(B) provides as follows:

---

[2] Dozier contends that "Ohio courts have consistently held that such regulations are admissible as evidence in the standard of care in nursing home cases," and cites to *Mackey* and *Lang v. Beachwood Pointe Care Ctr.*, 2017-Ohio-1550 (8th Dist.). (Appellant's reply brief, p. 10).

*Mackey* did not hold that federal and state regulations are admissible. The appellate court held the opposite and merely stated that "[a]ssuming arguendo that the trial court committed error in excluding any discussion about or the admission of the text of the . . . administrative regulations, we find this error to be harmless." *Id*. at ¶ 61.

*Lang*, likewise, does not stand for the proposition advanced by Dozier. *Lang* was a defense appeal in which the main issue was an award of punitive damages to the plaintiff. The *sole* mention of the admission of federal regulations is as follows:

> In the case at hand, plaintiff established the standard of care for nursing homes using two expert witnesses and various employees or former employees of the Nursing Home, as well as the Nursing Home's policies and procedures. Therefore, we cannot say that the admission of federal regulations regarding nursing homes was unfairly prejudicial.

*Id*. at ¶ 75.

(B) Any insurer's reimbursement policies or reimbursement determination or regulations issued by the United States centers for medicare and medicaid services or the Ohio department of medicaid regarding the health care services provided to the patient in any civil action based on a medical claim are not admissible as evidence for or against any party in the action and may not be used to establish a standard of care or breach of that standard of care in the action.

{¶ 25} Dozier contends that R.C. 2317.45(B) is unconstitutional and conflicts with the Rules of Evidence.[3] Dozier does not develop her argument regarding the alleged conflict with the Rules of Evidence. To the extent that the argument revolves around Evid.R. 103(A)(2), her contention is wholly without merit. Just because Evid.R. 103(A)(2) allows us to review the trial court's decision to exclude the evidence does not mean that the trial court abused its discretion by not allowing it.

{¶ 26} "An appellate court is not obliged to construct or develop arguments to support a defendant's assignment of error and will not guess at undeveloped claims on appeal." (Cleaned up.) *State v. Nicholson*, 2022-Ohio-2037, ¶ 135 (8th Dist.). Because Dozier has not developed her claim that R.C. 2317.45(B) conflicts with the Rules of Evidence, we decline to further consider the claim.

{¶ 27} Likewise, Dozier's constitutionality claim is not developed. Her argument in support of her claim is as follows: "R.C. 2317.45(B)'s determination as to the admissibility or non-admissibility of evidence in a judicial proceeding is in direct violation of Article IV, Section 5(B) of the Ohio Constitution.

---

[3] Dozier contends that "[o]n the merits, R.C. 2317.45(B) is unenforceable because it directly conflicts with the Ohio Rules of Evidence, which the Supreme Court has exclusive constitutional authority to promulgate under Article IV, Section 5(B) of the Ohio Constitution." (Appellant's reply brief, p. 10).

The trial court, therefore, could not enforce it." (Appellant's brief, p. 15). Again, Dozier's claim is merely conclusory with neither citation to authority nor argument advancing her position. We, therefore, decline to consider it.

{¶ 28} Finally regarding the motion in limine, The Willows also contended in its motion in limine that the regulations were prohibited under Evid.R. 403(A). Under Evid.R. 403(A), a trial court must exclude relevant testimony "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." We agree. Given the "multitude of rules" the regulations provide and "general" form that they take, we agree that the probative value of the regulations would have outweighed the danger of confusion to or of misleading the jury.

{¶ 29} In light of the discussion above, the trial court did not abuse its discretion in granting The Willows' motion in limine regarding federal and state regulations.

{¶ 30} The second assignment of error is overruled.

**The Trial Court Did Not Err by Granting The Willows' Motion for a Directed Verdict**

{¶ 31} In her first assignment of error, Dozier challenges the trial court's decision to grant The Willows' motion for a directed verdict.

{¶ 32} Civ.R. 50(A)(4), which sets forth the grounds upon which a motion for directed verdict may be granted, states:

> When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the

party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.

*See also Friedland v. Djukic*, 2010-Ohio-5777, ¶ 20-21 (8th Dist.); *Crawford v. Halkovics,* 1 Ohio St.3d 184, 186 (1982).

{¶ 33} A trial court's decision to grant a motion for a directed verdict involves a question of law, and therefore, an appellate court's review of that decision is de novo. *White v. Leimbach*, 2011-Ohio-6238, ¶ 22, citing *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 2002-Ohio-2842, ¶ 4. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial. *Lasley v. Nguyen*, 2007-Ohio-4086, ¶ 18 (2d Dist.), citing *Dupler v. Mansfield Journal Co., Inc.*, 64 Ohio St.2d 116, 119-120 (1980). Thus, the trial court's decision to grant a motion for a directed verdict is not granted any deference by the reviewing court. *Moore v. Kettering Mem. Hosp.*, 2008-Ohio-2082, ¶ 19 (2d Dist.), citing *Brown v. Cty. Commrs.*, 87 Ohio App.3d 704, 711 (4th Dist. 1993).

{¶ 34} At the close of Dozier's case, The Willows moved for a directed verdict on the ground, among others, that Dozier failed to offer expert testimony to a reasonable degree of medical certainty or probability that The Willows breached the standard of care and proximately caused Crawford's injury. After considering the parties' arguments, the trial court granted the defense's motion, stating, "It's like

how did he fall and what did they do to — what was the breach that caused all of the stuff? I just honestly don't see it . . . ."

{¶ 35} Dozier's complaint stated claims for ordinary negligence, medical negligence, wrongful death, and punitive damages. To maintain a wrongful-death action on a theory of negligence, Dozier needed to show three elements: a duty owed to Crawford, a breach of that duty, and proximate causation between the breach of duty and his death. *Littleton v. Good Samaritan Hosp. & Health Ctr.*, 39 Ohio St.3d 86, 92 (1988). These are the same three elements that must be shown to establish a negligence action generally, including a survivorship action predicated upon ordinary negligence or medical malpractice. *Id.* "To prevail on a claim of medical malpractice, a plaintiff must establish through expert testimony the acceptable medical standard of care, the defendant's breach of that standard, and that the breach proximately caused the plaintiff's injuries." *Schura v. Marymount Hosp.*, 2010-Ohio-5246, ¶ 27 (8th Dist.), citing *Bruni v. Tatsumi*, 46 Ohio St.2d 127 (1976).

{¶ 36} Regarding causation, the general rule is that "'the plaintiff must prove causation through medical expert testimony in terms of probability to establish that the injury was, more likely than not, caused by the defendant's negligence.'" *Drew-Mansfield v. MetroHealth Med. Ctr.*, 2015-Ohio-3033, ¶ 15 (8th Dist.), quoting *Wilson v. Kenton Surgical Corp.*, 141 Ohio App.3d 702, 705 (3d Dist. 2001), citing *Roberts v. Ohio Permanente Med. Group, Inc.*, 76 Ohio St.3d 483 (1996). "'"An event is probable if there is a greater than fifty percent likelihood that it produced the occurrence at issue."'" *Porach v. Cleveland Clinic Found.*, 2025-Ohio-

2522, ¶ 46 (8th Dist.), quoting *Lucsik v. Kosdrosky*, 2017-Ohio-96, ¶ 15 (8th Dist.), quoting *Stinson v. England*, 69 Ohio St.3d 451, 455 (1994).  "'However, there is no requirement that an expert utter any magic words in terms of a reasonable degree of medical certainty or probability.'" *Porach* at *id.*, quoting *Lucsik* at *id.*, citing *Blair v. McDonagh*, 2008-Ohio-3698, ¶ 27 (1st Dist.).  "'Rather, the expert's testimony, when considered in its entirety, must be equivalent to an expression of probability.'" *Id.*, quoting *id.*, citing *Jeffrey v. Marietta Mem. Hosp.*, 2013-Ohio-1055, ¶ 48 (10th Dist.).

{¶ 37} Consequently, to establish proximate cause, a plaintiff is required to introduce evidence demonstrating that it was a probability the defendant's alleged negligence was the cause of the claimant's injury.  *Drew-Mansfield* at *id.*, citing *Wilson* at 705-706.  Generally, a probability is that which is more likely than not. *Schlachet v. Cleveland Clinic Found.*, 104 Ohio App.3d 160, 167 (8th Dist. 1995). "Opinions expressed with a lesser degree of certainty must be excluded as speculative." *Shumaker v. Oliver B. Cannon & Sons*, 28 Ohio St.3d 367, 369 (1986). "Evidence which only shows that a condition could have been the result of an injury is 'insufficient proof to warrant submission of the cause to the jury.'" *Id.* at 369, fn. 3, quoting *Drew v. Indus. Comm.*, 136 Ohio St. 499, 501 (1940).

{¶ 38} In support of its motion for a directed verdict, The Willows relied on *McFarren v. Emeritus at Canton*, 2016-Ohio-484 (5th Dist.).  In *McFarren*, the patient was an elderly woman who resided at Emeritus, a residential care facility that provided assisted living.  The patient had periods of confusion or forgetfulness

and required safety checks. Further, the patient had an unsteady gait and required assistance for mobility and standby assistance for transfer (i.e., moving from one position to another). The patient's care plan required safety checks every shift for fall prevention.

{¶ 39} The patient fell — an Emeritus staff member found her lying on the floor next to her bed. Staff at the Emeritus did not have any knowledge about how the patient fell. An x-ray scan showed that the patient fractured her hip. The facility transported her to a hospital. Several days later, the patient passed away. Her immediate cause of death was listed as complications of a hip fracture.

{¶ 40} The administrator of the decedent's estate filed an action against Emeritus, which included a claim for negligence. Emeritus filed a motion for summary judgment, which the trial court granted. The administrator appealed.

{¶ 41} The appellate court first considered an affidavit from the patient's grandson, which the trial court struck. In the affidavit, the grandson averred that his grandmother told him that she had been calling out for someone to help her move from her wheelchair to her bed, but no one responded, so she attempted to move herself, at which point she fell. The appellate court agreed that the statement was hearsay not subject to the hearsay exception under Evid.R. 804(B)(5), as contended by the plaintiff, and found that the trial court did not abuse its discretion by striking the affidavit.

{¶ 42} However, "[e]ven assuming that the statements in the [grandson's] Affidavit were admissible," the appellate court found that "[t]here is no evidence in

the record to establish a genuine issue of material fact as to how [the patient] fell." *McFarren*, 2016-Ohio-484, at ¶ 82 (5th Dist.). Specifically, the court noted that no one at Emeritus recalled the patient being in her room before the fall, there was no evidence if she had been in her bed or the wheelchair before she was discovered, and there was no evidence if she wore, or even knew how to use, an emergency pendant to alert someone if she fell.

{¶ 43} Moreover, even assuming the patient had called for assistance, the *McFarren* Court noted that the evidence was lacking as to how long or how many times she called out, without which, there was no way

> to determine if any alleged delay in responding constituted proximate cause for purposes of establishing negligence. Without evidence as to how long she called out prior to deciding to attempt the transfer on her own, there is not sufficient evidence to meet the proximate cause standard.

*Id.* at ¶ 85.

{¶ 44} Regarding the plaintiff's expert, the appellate court found that the

> expert opines different fall preventions that Emeritus should have had in place to prevent [the patient's] fall, but in this case, there is no knowledge as to how [the patient] fell. As the trial court determined, it is speculation on part of [plaintiff's] expert to state that if Emeritus had more precautions in . . . place, [the patient] would not have fallen.

*Id.* at ¶ 82.

{¶ 45} Thus, the *McFarren* Court affirmed summary judgment in favor of Emeritus.

{¶ 46} After *McFarren* was decided, the Sixth Appellate District issued a decision in a similar case, *Miller v. Toledo Hosp.*, 2017-Ohio-2691 (6th Dist.).

In *Miller*, the patient was admitted to the hospital with various coronary issues; he also had memory issues. As part of the admission process, the patient was evaluated for his fall risk and it was determined that he was high risk. The hospital's fall prevention policy required various preventative measures including assigning a patient a room near the nurse's station, leaving the patient's door open, instructing the patient to call for assistance, and providing the patient with assistance for transfers and ambulation. The policy included a discretionary measure of the use of a bed alarm.

{¶ 47} Three days after the patient's admission, he fell in his room. A nurse was the only witness to the fall, but the nurse passed away prior to providing a statement about the incident. The nurse's notes indicated that the patient was found walking into the bathroom on his own, was asked if he needed any help, proceeded toward the toilet, lost his balance, and fell. When asked if anything hurt, the patient said only his right inner, upper leg. Other than an abrasion, no other apparent injuries were noted.

{¶ 48} It was later determined that the patient had suffered a hip fracture; he underwent surgery to repair it. After the surgery, the patient went to a rehabilitation facility and was later discharged home. Approximately nine months after the fall, the patient passed away from congestive heart failure.

{¶ 49} The patient's daughter filed a medical negligence claim against the hospital, and the hospital moved for summary judgment. The daughter provided an expert opinion from a nurse. The expert opined that the hospital breached the

standard of reasonable nursing care by failing to provide a bed alarm and/or by failing to assist the patient. The trial court granted the hospital's motion for summary judgment, finding that the expert "failed to demonstrate that had the bed alarm been in place, [the patient] would not have made it to the bathroom unattended." *Miller*, 2017-Ohio-2691, at ¶ 8 (6th Dist.). The trial court further found that the expert's opinion that the hospital's nurse "failed to assist [the patient] and that this caused his fall was based upon an inference that she had the time to assist him prior to the fall and that she, in fact, failed to act consistently with that opportunity." *Id.*

{¶ 50} The Sixth Appellate District noted, as did the trial court, the "breadth of speculative permutations relative to the circumstances surround [the patient's] fall," including the following: where was the hospital's nurse when she saw the patient out of his bed (in the room or in the hallway); how quickly did the patient fall after the nurse saw him out of bed; where was the hospital's nurse when she asked the patient if he needed assistance; was the hospital's nurse impeded in her ability to get to the patient; did the hospital nurse attempt, unsuccessfully, to help the patient; or did the hospital's nurse "simply stand (in some unknown location) and watch these events unfold." *Id.* at ¶ 26. The *Miller* Court affirmed the trial court, noting that numerous questions "not capable of an answer leads to the inescapable conclusion that no issue of fact remain for trial." *Id.* at ¶ 27. The court found the expert nurse's "opinions on causation . . . too speculative to set forth a prima facie case of medical negligence." *Id.*

{¶ 51} Dozier urges us to rely on this court's decision in *Daley v. Univ. Hosps.*, 1998 Ohio App. LEXIS 1723 (8th Dist. Apr. 23, 1998). In *Daley*, the plaintiff was admitted to the hospital for evaluation and treatment of Alzheimer's disease. When she was admitted, the patient had difficulty speaking, was in a volatile mood, and was physically frail. Her medical records indicated that there was concern about her gait and changes in her blood pressure.

{¶ 52} On one particular evening approximately two weeks after the patient was admitted, she was "exhibiting combative and extremely agitated behavior." *Id.* at *2. The patient's doctor ordered the nursing staff to administer three different sedatives to the patient; the medications were designed to calm the patient and enable her to sleep. Later, after the medications had been administered to the patient, hospital staff heard a "thud" in the patient's room. *Id.* Staff found the patient on the floor; she had a broken hip. Because of her Alzheimer's disease, the patient was unable to communicate the cause of her fall.

{¶ 53} The patient's legal guardian filed a medical negligence case against the doctor and hospital. The defendants filed motions for summary judgment — they "premised their motions for summary judgment exclusively on plaintiff's failure to isolate the cause of [the patient's] fall." *Id.* at *3. The defendants cited the plaintiff's expert, who, at deposition, testified that he could not "state precisely the ideology of the patient's fall"; and because he did not know what happened at the time of the patient's fall, he could not "state with reasonable medical certainty or probability as to why she fell." *Id.* at *4. Further, the plaintiff's expert admitted that

other causes could have contributed to the patient's fall and even if the hospital had used the interventions he believed they should have, the fall might still have occurred.

{¶ 54} The trial court granted the defendants' motions for summary judgment, and the plaintiff appealed. This court reversed the trial court, noting that the portion of the plaintiff's expert's testimony that the defendants mainly relied on was "taken out of context." *Id.,* 1998 Ohio App. LEXIS 1723, at *5. Specifically, this court noted the two interventions plaintiff's expert opined would have been appropriate — a companion to stay with the patient or restraining the patient — were aligned with the circumstances as they existed and were known to the defendants, during the time in question. That is, on the evening the patient fell, she had been especially combative and agitated, thus leading her doctor to administer three sedatives to her. According to the plaintiff's expert, the administration of the sedatives, coupled with the patient's gait issues and fluctuations in blood pressure, "should have led defendants to consider her risk of falling" and that "didn't seem to be outlined or considered." *Id.* at *5-*6.

{¶ 55} This case is distinguishable from *Daley*. Here, although Crawford had falls in the past while at The Willows, the last fall before the one at issue was two years prior. Further, just prior to the subject fall, Crawford had completed a course of physical therapy and his therapists indicated that he was "independent." There was not an immediate, preceding event — as there was in *Daley* — that should have alerted The Willows that a fall was likely imminent. Further, the expert in *Daley*

was specific as to the two interventions he believed would have likely prevented the patient's fall, whereas in this case, the expert listed numerous interventions that he opined would have prevented Crawford's fall.

{¶ 56} We acknowledge that cases of this type are difficult because, as this court stated in *Daley*, "A plaintiff . . . is not required to eliminate all possibilities in order to establish proximate cause . . . [which] would have the effect of forcing plaintiff to establish causation beyond a reasonable doubt, and that standard is not applicable to civil suits." *Id*. at *6. Although Dr. Klein stated that it was his opinion, to "a reasonable degree of medical probability and medical certainty," that The Willows' failures caused Crawford to fall and break his hip, there needed to be sufficient evidence to support that opinion to the required degree of certainty — a probability.[4]  Otherwise, an expert opinion is deemed speculative and inadmissible.

{¶ 57} After our de novo review of the record, we find that the evidence put forth in support of Dr. Klein's expert testimony, when considered in its entirety, was speculative and inadmissible. In other words, the evidence did not support the probability that The Willows' breach of a duty was the proximate cause of Crawford's injury. Although Dr. Klein testified about various interventions he believed The

---

[4] *See also Grossman v. Hawkes Hosp. of Mt. Carmel*, 52 Ohio St.3d 87 (1990), wherein the Ohio Supreme Court disposed of a medical negligence case in a single paragraph. The Court found that the trial court did not err by directing a verdict in favor of the defendant because the "Plaintiffs *failed to establish facts* from which reasonable minds could conclude that defendant hospital breached any duty to [the plaintiff] proximately causing his injuries." (Emphasis added.) *Id*. at 88.

Willows should have had in place to prevent a fall, there simply was no evidence as to how Crawford fell. Thus, it was speculation on the part of Dr. Klein that if the Willows had more precautions in place, Crawford would not have fallen. The trial court did not err by directing a verdict in The Willows' favor. The first assignment of error is overruled.

{¶ 58} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

MICHELLE J. SHEEHAN, A.J., and
EMANUELLA D. GROVES, J., CONCUR